IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **WALKY PEREIRA DE CASTRO** | : | **No. 18-477-5** |
| | : | |

**MEMORANDUM**

PRATTER, J.                                                                                           JULY 14, 2022

Walky Pereira De Castro seeks compassionate release because of the risks posed by the COVID-19 pandemic. He has received the COVID-19 booster vaccine and has also recovered from a prior infection of COVID-19. As a result, he has not shown that he is at serious risk of bodily harm. The Court thus denies his motion.

### BACKGROUND

**I. The Conviction**

Mr. Pereira De Castro was caught with six other individuals preparing three kilograms of fentanyl-laced heroin for sale at a "cut house" in North Philadelphia. He and his companions attempted to flee, knocking over a large tray of heroin and fentanyl and dispersing the drugs into the air. One officer on the scene received Narcan, which is used to treat overdoses, due to the resulting exposure. Two additional kilograms of heroin and fentanyl were later found elsewhere in the house.

Mr. Pereira De Castro pled guilty to one count of conspiracy to possess with intent to distribute 100 grams or more of heroin and fentanyl and one count of possession with intent to distribute. 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 2. He was sentenced to 52 months' imprisonment and two years of supervised release. He is now serving his sentence at Federal Correctional Institute Allenwood Low ("FCI Allenwood").

1

## II. The Request for Compassionate Release

Mr. Pereira De Castro, 36 years old, suffers from Type 2 diabetes, hypertension, hyperlipidemia,[1] and latent tuberculosis, for which he takes daily medications. He is mildly obese and has a body mass index of 30.8.[2] He contracted COVID-19 in June 2020 but remained asymptomatic. He has since received the Johnson & Johnson vaccine and a booster dose of the Moderna vaccine. He now moves for compassionate release, arguing that he is at heightened risk of severe illness or death following contraction of COVID-19 and that he has functionally received a harsher penalty because he has served his entire sentence during the pandemic.

## III. The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Federal Bureau of Prisons (November 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 14, 2022). The BOP permits only non-contact and socially distanced visits with inmates, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") Pub. L. No. 116-136 § 12003(b)(2).

---

[1] Hyperlipidemia is defined as "the presence of excess fat or lipids in the blood." *Hyperlipidemia*, in *Merriam-Webster's Medical Dictionary*, https://unabridged.merriam-webster.com/medical/hyperlipidemia (last visited July 14, 2022).

[2] For adults, a body mass index of 25 to 29.9 results in in an indication of overweight, while an index of 30 or more is an indication of obesity. *Body mass index*, in *Merriam-Webster's Medical Dictionary*, https://unabridged.merriam-webster.com/medical/hyperlipidemia (last visited July 14, 2022).

The BOP has offered vaccines to its staff members and inmates. At the Allenwood Federal Correctional Complex, of which FCI Allenwood is part, the BOP has fully vaccinated about 75% of its current inmates. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2022). So far, 373 inmates at FCI Allenwood Low have recovered from COVID-19, while one inmate death has been attributed to COVID-19 disease. *Id.* It currently has zero positive inmates or staff. *Id.*

## LEGAL STANDARDS

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). A court can, however, reduce a sentence for "extraordinary and compelling reasons," including a prisoner's medical condition, provided that the prisoner has fully exhausted his administrative remedies. § 3582(c)(1)(A). To qualify as extraordinary, the reason for a sentence reduction must be "[b]eyond what is usual, customary, regular or common." *Extraordinary* (def. 1), in *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def.1) in *id.* For a non-terminal illness, the court must find that the prisoner has "a serious physical or medical condition . . . that substantially diminishes [his] ability" to care for himself in prison "and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. (A)(ii).[3] The prisoner bears the burden of proving that such extraordinary and compelling reasons exist to justify compassionate release. *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020).

---

[3] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

3

In addition, the Court must weigh the statutory sentencing factors, set forth in 18 U.S.C. § 3553(a), and the relevant policy statements from the United States Sentencing Commission, detailed in 18 U.S.C. § 3582(c)(1)(A). Thus, before reducing the sentence, the court needs to find that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Pointing to his medical conditions and the ongoing pandemic, Mr. Pereira De Castro requests that the Court reduce his sentence or permit him to complete his sentence on home confinement.[4]

The Court does not have the authority to transfer Mr. Pereira De Castro to home confinement. That decision is within the sole discretion of the Director of the Bureau of Prisons. 18 U.S.C. § 3624(c)(2); CARES Act, Pub. L. No. 116-136 § 12003(b)(2); *United States v. Ramirez-Ortega*, No. 11-cr-251-07, 2020 WL 4805356, at *3 (E.D. Pa. Aug. 18, 2020). Thus, in order to send Mr. Pereira De Castro home, the Court would have to dismiss the remaining year of his sentence. The Court will not do so. Mr. Pereira De Castro has not shown that he is at a significant risk of serious illness if he caught COVID-19 again. Additionally, he committed a serious crime, further counseling against early release.

### I. Because he is vaccinated and boosted and has already recovered from a previous COVID-19 infection, Mr. Pereira De Castro has not shown that he is at significant risk of serious disease

Mr. Pereira De Castro suffers from Type 2 diabetes, hypertension, obesity, and latent tuberculosis. These conditions are recognized as factors for putting a person at higher risk of severe illness following contraction of COVID-19. *People with Certain Medical Conditions*, Centers for

---

[4] Because Mr. Pereira De Castro submitted a request for compassionate release with the warden of FCI Allenwood on or about July 26, 2021, he has exhausted his administrative remedies.

4

Disease Control and Prevention (last updated May 2, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 14, 2022).

But Mr. Pereira De Castro has not shown that he would be at a *substantial* risk of *serious* illness if he were to contract COVID-19 again. Mr. Pereira De Castro has been fully vaccinated and received an additional booster dose of the Moderna vaccine. The COVID-19 vaccines, and particularly an mRNA booster like the Moderna vaccine, are extremely effective in preventing serious illness and death, even against the Omicron variant. Adam S. Lauring *et al.*, *Clinical Severity of, and Effectiveness of mRNA Vaccines Against, Covid-19 From Omicron, Delta, and Alpha SARS-Cov-2 Variants in the United States: Prospective Observational Study*, British Med. J. 1, 1 (2022); *Frequently Asked Questions About COVID-19 Vaccination*, Centers for Disease Control and Prevention (updated July 11, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last visited July 14, 2022). Moreover, Mr. Pereira De Castro has already contracted COVID-19 once, at which time he remained asymptomatic. As a result, his chance of hospitalization upon reinfection is significantly reduced. *See, e.g.*, Ian D. Plumb *et al.*, *Effectiveness of COVID-19 mRNA Vaccination in Preventing COVID-19–Associated Hospitalization Among Adults with Previous SARS-CoV-2 Infection — United States, June 2021–February 2022*, 71 Morbidity & Mortality Weekly Report 549, 549 (2022). Mr. Pereira De Castro has offered no evidence—no medical study or doctor's opinion—to prove that he "remain[s] vulnerable to *severe*" disease and would be incapable of caring for himself while in prison. *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022) (emphasis added).

Mr. Pereira De Castro also suggests that he has, for all intents and purposes, already served 52 months' worth of imprisonment, for the pandemic has led to "onerous lockdown conditions"

5

that have "significantly increas[ed] the hardships experienced . . . beyond that intended at sentencing."[5] Doc. No. 221, at 2. But Mr. Pereira De Castro was sentenced *during* the pandemic, and the Court set his sentence with these conditions in mind. Further, the pandemic disrupted prison operations across the country. "[T]hough these [pandemic] conditions are not ideal, every prisoner . . . is subject to" them; they are not "special or unique" to Mr. Pereira De Castro. *United States v. Everett*, No. 12-cr-162, 2021 WL 322182, at *5 (W.D. Pa. Feb. 1, 2021) (internal quotation marks omitted). These "onerous" conditions do not themselves qualify as so extraordinary and compelling as to warrant a reduced sentence.

## II. The sentencing factors counsel against releasing Mr. Pereira De Castro

Even if Mr. Pereira De Castro could demonstrate that he was at a substantial risk from COVID-19, the Court would still deny his release based on the § 3553(a) factors. These factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

The crime to which Mr. Pereira De Castro pled guilty is extremely serious: he was caught packaging three kilograms of heroin and fentanyl. To reflect the seriousness of that crime, this Court sentenced him to 52 months' imprisonment, with the hope that such a sentence would deter

---

[5] Mr. Pereira De Castro argues on the one hand that he is at heightened risk of severe illness resulting from COVID-19 disease due to the BOP's failure to contain outbreaks of infection on the premises of FCI Allenwood; on the other hand, he argues that the "onerous lockdown" imposed by the BOP to address the pandemic has resulted in conditions more akin to those experienced by high-security prisoners, rather than low-security prisoners like Mr. Pereira De Castro. Even if the Court were to consider Mr. Pereira De Castro's perception of how slowly or quickly his sentence is passing due to these conditions—which the Court does not—he cannot have it both ways.

6

both Mr. Pereira De Castro and others from engaging in similar drug trafficking. The sentence imposed by the Court was already a downward departure from the five-year mandatory minimum that would have been applicable absent the "safety valve" provision set forth in 18 U.S.C. § 3553(f)(1)–(5).

Mr. Pereira De Castro remains a danger to the community. True, Mr. Pereira De Castro had only one prior arrest for possession with intent to use, and he has not had any disciplinary infractions while in custody. He has also taken academic, vocational training, and family-relationship training classes, among others, during his sentence, which the Court commends. But the drugs that he was packaging for distribution are highly addictive and dangerous, even deadly, and he was helping to package thousands of doses. *See United States v. Alvarado-Tizoc*, 656 F. 3d 740, 744 (7th Cir. 2011). Indeed, one of the officers executing the search warrant had to be treated for an overdose on the scene after inhaling some of the drugs dispersed into the air. In short, releasing Mr. Pereira De Castro early would not "promote respect for the law" or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

CONCLUSION

For these reasons, the Court denies Mr. Pereira De Castro's motion to reduce his sentence. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE